19-3712
*Tangreti v. Bachmann*

# In the
# United States Court of Appeals
## FOR THE SECOND CIRCUIT

AUGUST TERM 2020
No. 19-3712

**CARA TANGRETI,**
*Plaintiff-Appellee,*

v.

**CHRISTINE BACHMANN,**
*Defendant-Appellant.*[*]

On Appeal from the United States District Court
for the District of Connecticut

ARGUED: OCTOBER 14, 2020
DECIDED: DECEMBER 28, 2020

Before: WALKER and MENASHI, *Circuit Judges*.[†]

---

[*] The Clerk of Court is directed to amend the caption as set forth above.

[†] Judge Ralph K. Winter, originally a member of the panel, died on December 8, 2020. The two remaining members of the panel, who are in agreement, have determined the matter. *See* 28 U.S.C. § 46(d); 2d Cir. IOP E(b); *United States v. Desimone*, 140 F.3d 457, 458-59 (2d Cir. 1998).

CERTIFIED COPY ISSUED ON 12/28/2020

Plaintiff-Appellee Cara Tangreti was sexually abused by three correctional officers during her incarceration at York Correctional Institute. She subsequently sued eight prison supervisory officials alleging, *inter alia*, that they violated the Eighth Amendment through their deliberate indifference to the substantial risk of her sexual abuse by the three correctional officers. Applying a previously articulated test for supervisory liability, *see Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995), the district court denied summary judgment and qualified immunity to one of the defendants, Defendant-Appellant Christine Bachmann.

Bachmann appealed from the denial of qualified immunity arguing that the scope of supervisory liability for deliberate-indifference claims under the Eighth Amendment is not clearly established after *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), which called the supervisory-liability test into question. We agree and hold that (1) after *Iqbal*, there is no special test for supervisory liability; rather "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution," *id*. at 676; (2) for deliberate-indifference claims under the Eighth Amendment against a prison supervisor, the plaintiff must plead and prove that the supervisor had subjective knowledge of a substantial risk of serious harm to an inmate and disregarded it; and (3) the pretrial record in this case does not support the inference that Bachmann had the required subjective knowledge that Tangreti was at a substantial risk of being sexually abused.

For these reasons, we **REVERSE** the district court's decision and remand with instructions to enter summary judgment for Bachmann.

2

ANTONIO PONVERT III, Koskoff, Koskoff & Bieder, P.C., Bridgeport, CT, *for Plaintiff-Appellee*.

MATTHEW B. BEIZER, Assistant Attorney General, *for* William Tong, Attorney General of the State of Connecticut, Hartford, CT, *for Defendant-Appellant*.

MENASHI, *Circuit Judge*:

Plaintiff-Appellee Cara Tangreti was a prison inmate at York Correctional Institute from August 2013 to November 2014. During her incarceration, Tangreti was sexually abused on numerous occasions over the course of several months by three correctional officers—Jeffrey Bromley, Matthew Gillette, and Kareem Dawson—all of whom were later terminated from their employment with the Department of Corrections and criminally prosecuted.

Tangreti subsequently filed suit under 42 U.S.C. § 1983 against eight prison supervisors alleging, *inter alia*, that they violated the Eighth Amendment by displaying deliberate indifference to the substantial risk of sexual abuse by the three correctional officers. The district court granted summary judgment to seven of the eight defendants for the § 1983 claims but denied Defendant-Appellant Christine Bachmann's motion for summary judgment, concluding that there was a genuine issue of material fact as to whether Bachmann was grossly negligent and that she was not entitled to qualified immunity. Bachmann appealed from the denial of qualified immunity.

We conclude that Bachmann is entitled to qualified immunity because her actions did not "violate[] a statutory or constitutional right," let alone such a right "that was clearly established at the time of the challenged conduct." *Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015). Following *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), courts may not apply a special rule for supervisory liability. Rather, the plaintiff must directly plead and prove that "each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.* at 676.

Applying the proper standard, we conclude that there is insufficient evidence in the pretrial record for the inference that Bachmann, through her own actions, displayed deliberate indifference to the substantial risk of sexual abuse. Even considering only Tangreti's version of the facts, the pretrial record does not support the inference that Bachmann had subjective knowledge that Tangreti was at a substantial risk of sexual abuse. *See Farmer v. Brennan*, 511 U.S. 825, 829, 837 (1994). It is not sufficient, as the district court maintained, that Bachmann *should have known* of the substantial risk of sexual abuse.

Accordingly, we reverse the district court and remand with instructions to enter summary judgment for Bachmann.

## BACKGROUND

### I

From August 2013 to November 2014, Tangreti was incarcerated at York Correctional Institute. Over a period of several months in 2014, Tangreti was sexually abused on numerous occasions

4

by three York correctional officers—Jeffrey Bromley, Matthew Gillette, and Kareem Dawson.

During this period, Tangreti lived on the first floor of the Davis Building. Dawson and Bromley were assigned to the first floor of the Davis Building. Correctional officers assigned to the first floor had an office on that floor. Tangreti was sexually abused by Bromley from May 2014 through September 2014, and by Dawson starting in March 2014. Gillette sexually abused Tangreti twice on the two days that Gillette was assigned to the Davis Building in September 2014. Tangreti did not formally report these incidents to any of the staff until October 31, 2014. On that date, Bachmann and Captain Alex Smith, who supervised the correctional officers, learned from another inmate that Tangreti was being sexually abused and questioned Tangreti about it.[1] York allows an inmate to submit an inmate request form or inmate administrative remedy anonymously, but Tangreti did not use these mechanisms.

During the period of sexual abuse, Bachmann was a counselor supervisor in the Davis Building and had an office on the first floor. As a counselor supervisor, Bachmann oversaw the day-to-day operations of the Marilyn Baker Substance Abuse Program, which is based in the Davis Building. Bachmann was not Tangreti's individual

---

[1] On October 24, 2014, Tangreti gave a personal note to Correctional Officer Daniel Crowley, in which she stated that she was in a relationship with an unnamed correctional officer. Crowley discarded the note and did not report this information to any supervisor. After the Department of Corrections Security Division conducted an investigation into this matter, Crowley was terminated from his employment and criminally prosecuted. *Tangreti v. Semple*, No. 3:17-CV-1420, 2019 WL 4958053, at *3 (D. Conn. October 8, 2019).

counselor, but she did interact with the inmates in the substance abuse program, including Tangreti.

In her role as a counselor supervisor, Bachmann was not specifically responsible for compliance matters related to the Prison Rape Elimination Act ("PREA"), 34 U.S.C. §§ 30301 *et seq*. However, if a PREA incident occurred in the Davis Building, Bachmann would ensure that the proper paperwork was completed and forwarded to the PREA Coordinator.

Because she had an office on the first floor of the Davis Building, Bachmann worked alongside Bromley and Dawson. She did not know Gillette. On two occasions Bachmann observed inappropriate interactions between Tangreti and Bromley. Once, Bachmann noticed Tangreti "lingering at the doorway" of the first-floor office while Bromley sat behind the desk. *Tangreti*, 2019 WL 4958053, at *19. Another time, Bachmann witnessed Bromley and Tangreti speaking in the laundry room of the Davis Building. Bachmann described the conversation as "inappropriate" because "they were talking about other staff members." *Id.* In response, Bachmann claims that she removed Bromley and Tangreti from the laundry room and told Bromley to "knock it off"—that he "d[idn't] need to be talking to inmates about staff, period." J. App'x 228. Bachmann also claims that she discussed these incidents with Smith but did not take any further action because she did not consider the incidents to be serious. Tangreti disputes that such a discussion occurred.

In July 2015, the Department of Corrections Security Division's Investigative Office interviewed Bachmann. She reported that she had "seen some questionable behavior with Bromley in the past,"

6

including "him being too close to the inmates, and having the inmates in the office when they have no reason to be," and that "he was always walking the line of inappropriateness." *Tangreti*, 2019 WL 4958053, at *20. She also reported that she had observed that Tangreti and Bromley were frequently around each other and that other inmates had complained about their closeness.

Bachmann further reported that leading up to October 31, 2014, she noticed a change in Tangreti's behavior and physical appearance. Tangreti appeared "anxious," often visited Bachmann's office, and said that she was "very emotional, crying all the time and she didn't know why." *Id.* Bachmann also observed that Tangreti was "not getting up, or wearing makeup on a regular basis, and she had definitely gained weight, but not a huge amount." *Id.*

On October 31, 2014, Bachmann and Smith questioned Tangreti about the sexual abuse. Tangreti admitted that she had sexual encounters with the three correctional officers. York officials instituted the PREA protocol, which included medical care for Tangreti and separation from the officers. Tangreti's allegations were reported to the Connecticut State Police, resulting in the arrest and prosecution of the three officers. A formal investigation by the Department of Corrections Security Division substantiated Tangreti's allegations, and the three officers as well as Crowley were terminated from their employment with the Department of Corrections. Bromley and Gillette entered guilty pleas in their criminal cases and were incarcerated.

## II

Tangreti subsequently filed suit under 42 U.S.C. § 1983 against eight supervisory officials at the Department of Corrections alleging

7

that the officials violated the Eighth Amendment by exhibiting deliberate indifference to the substantial risk of sexual abuse by the three officers.[2] At the close of discovery, all eight defendants moved for summary judgment. The district court granted summary judgment on the § 1983 claims to every defendant but Bachmann.

The district court denied summary judgment to Bachmann because Bachmann "was conceivably personally involved" in the violations against Tangreti. *Tangreti*, 2019 WL 4958053, at *19. The district court based its ruling on prior case law establishing that supervisors may be liable under § 1983 for gross negligence in supervising subordinates who commit the wrongful acts or for failing to act on information indicating that unconstitutional acts were occurring. *Id.* (relying on *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir. 1995)). The district court also held that Bachmann is not entitled to qualified immunity because "[t]he law in the Second Circuit at the time clearly established that prison inmates had a constitutional right to be protected from sexual abuse and that prison supervisors could be liable under § 1983 for gross negligence in supervising subordinates or for failing to act on information indicating that unconstitutional acts were occurring." *Id.* at *21 (internal citations, quotation marks, and alterations omitted).

Bachmann timely appealed to this court.

## DISCUSSION

Bachmann argues on appeal that she is immune from suit under the doctrine of qualified immunity because her actions did not

---

[2] Tangreti also brought state-law claims for recklessness and intentional infliction of emotional distress, which are not at issue in this appeal.

8

"violate[] a statutory or constitutional right that was clearly established at the time of the challenged conduct." *Taylor*, 135 S. Ct. at 2044. We agree.

**I**

As a threshold matter, we must consider our jurisdiction over this interlocutory appeal. Ordinarily, a district court's denial of a motion for summary judgment is not appealable because it is a non-final decision. *See* 28 U.S.C. § 1291 ("The courts of appeals … shall have jurisdiction of appeals from all final decisions of the district courts."); *Ortiz v. Jordan*, 562 U.S. 180, 188 (2011) ("Ordinarily, orders denying summary judgment do not qualify as 'final decisions' subject to appeal."). However, a district court's denial of qualified immunity, to the extent that it presents a question of law, is a final decision subject to immediate appeal. *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985); *Vega v. Semple*, 963 F.3d 259, 272 (2d Cir. 2020). This distinction proceeds from the recognition that "qualified immunity is in part an entitlement not to be forced to litigate the consequences of official conduct" and therefore "a claim of immunity is conceptually distinct from the merits of the plaintiff's claim that his rights have been violated." *Forsyth*, 472 U.S. at 527-28.

Accordingly, "a defendant may not appeal a district court's summary judgment order—even one addressing the availability of a qualified immunity defense—insofar as that order determines whether or not the pretrial record sets forth a genuine issue of fact for trial." *Catone v. Spielmann*, 149 F.3d 156, 159 (2d Cir. 1998) (internal quotation marks omitted). But Bachmann may invoke our jurisdiction to review legal questions related to her claim of qualified immunity, "such as whether [her] conduct … violated 'clearly established' law

9

or *a fortiori* whether it violated the law at all." *Grune v. Rodriguez*, 176 F.3d 27, 32 (2d Cir. 1999) (internal citation omitted).

For this reason, in this appeal, Bachmann must "support an immunity defense on stipulated facts, facts accepted for purposes of the appeal, or the plaintiff's version of the facts that the district judge deemed available for jury resolution." *Salim v. Proulx*, 93 F.3d 86, 90 (2d Cir. 1996).

Bachmann offers two arguments. First, she argues that following the Supreme Court's decision in *Iqbal*, the level of personal involvement necessary to establish that a prison supervisory official violated the Eighth Amendment through deliberate indifference is not clearly established. Second, she argues that—even based on the uncontested facts—her personal involvement was insufficient to establish a violation of the Eighth Amendment under the proper post-*Iqbal* standard. These are reviewable questions of law. We review the denial of qualified immunity *de novo*. *Vega*, 963 F.3d at 272.

## II

Bachmann does not dispute that prison inmates have a clearly established constitutional right to protection from sexual abuse. *See Boddie v. Schnieder*, 105 F.3d 857, 861 (2d Cir. 1997). Rather, she argues that her liability as a supervisor of the Davis Building is not clearly established. This court articulated standards for supervisory liability in *Colon v. Coughlin*, 58 F.3d 865 (2d Cir. 1995), but the Supreme Court's decision in *Iqbal* called those standards into question and this court has not clarified whether or to what extent the *Colon* standards continue to apply. *See Reynolds v. Barrett*, 685 F.3d 193, 205 n.14 (2d Cir. 2012) ("*Iqbal* has … engendered conflict within our Circuit about

10

the continuing vitality of the supervisory liability test set forth in *Colon*.").

The district court relied on *Colon* to conclude that Bachmann was "conceivably personally involved" in violating Tangreti's rights under the Eighth Amendment either because Bachmann was grossly negligent in supervising the officers or because she failed to act on information indicating that Tangreti was at substantial risk of sexual abuse. *Tangreti*, 2019 WL 4958053, at *19.

We disagree with that conclusion. *Iqbal* holds that a plaintiff may not rely on a special test for supervisory liability. Rather, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Accordingly, for deliberate-indifference claims under the Eighth Amendment against a prison supervisor, the plaintiff must plead and prove that the supervisor had subjective knowledge of a substantial risk of serious harm to an inmate and disregarded it. *See Farmer*, 511 U.S. at 837. The pretrial record in this case does not support the inference that Bachmann had the required subjective knowledge that Tangreti was at a substantial risk of being sexually abused.

**A**

Before the Supreme Court decided *Iqbal*, we identified five categories of evidence that may establish the liability of a supervisory official for a subordinate's conduct under § 1983:

> The personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the

11

> violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of [the plaintiffs] by failing to act on information indicating that unconstitutional acts were occurring.

*Colon*, 58 F.3d at 873.

Fourteen years later, the Supreme Court decided *Iqbal*. In *Iqbal*, a Pakistani Muslim detainee filed suit against federal officials including the former Attorney General of the United States and the former Director of the Federal Bureau of Investigation. He alleged that each official "knew of, condoned, and willfully and maliciously agreed to subject [Iqbal] to harsh conditions of confinement … on account of his religion, race, and/or national origin" in violation of his rights under the First and Fifth Amendments. 556 U.S. at 669 (internal alterations, quotation marks, and citations omitted). The Court explained that—for *Bivens* suits against federal officials and for § 1983 suits against state officials—the "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*." *Id.* at 676. Thus, "[b]ecause vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Id.*

The Court noted that "[t]he factors necessary to establish a *Bivens* violation will vary with the constitutional provision at issue." *Id.* When, as in *Iqbal*, "the claim is invidious discrimination in contravention of the First and Fifth Amendments … the plaintiff must

12

plead and prove that the defendant acted with discriminatory purpose," regardless of whether the defendant is a subordinate or a supervisor. *Id.* A supervisor's "mere knowledge of his subordinate's discriminatory purpose" is not sufficient because that knowledge does not "amount[] to the supervisor's violating the Constitution." *Id.* at 677. The Court explained that such a "conception of 'supervisory liability'"—according to which a supervisor may be held liable based on a lesser showing of culpability than the constitutional violation requires—is "inconsistent" with the principle that officials "may not be held accountable for the misdeeds of their agents." *Id.*

*Iqbal* cast doubt on the continued viability of the special standards for supervisory liability set forth in *Colon*. *See Reynolds*, 685 F.3d at 205 n.14. Without clear direction from this court,[3] district

---

[3] Since *Iqbal*, we have not clarified whether and to what extent the standards for supervisory liability set forth in *Colon* remain viable. *See Lombardo v. Graham*, 807 F. App'x 120, 124 n.1 (2d Cir. 2020) (summary order) (noting that "*Iqbal* may have heightened the requirements for supervisory liability" but declining to decide the issue); *Rasparado v. Carlone*, 770 F.3d 97, 117 (2d Cir. 2014) (declining to decide the fate of *Colon*'s supervisory liability test because the defendant was not liable under any of the *Colon* categories); *Reynolds*, 685 F.3d at 205 n.14 (declining to decide the fate of *Colon*'s supervisory liability test because it was "not properly before us"); *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) (declining to decide the fate of *Colon's* supervisory liability test but noting that *Iqbal* "may have heightened the requirements for showing a supervisor's personal involvement with respect to certain constitutional violations"); *see also Morgan v. Dzurenda*, 956 F.3d 84, 90 (2d Cir. 2020) (noting but not applying the "doctrine of supervisory liability" because it was "not implicated" in that case); *Brandon v. Kinter*, 938 F.3d 21, 37 (2d Cir. 2019) (concluding, without mentioning *Iqbal*'s impact on *Colon*'s supervisory liability test, that four supervisory defendants who were "informed of the

13

courts in the circuit have sought, with inconsistent results, to determine the effect of *Iqbal* on supervisory liability. Some district courts have concluded that *Iqbal* imposes an "'active conduct' standard" according to which a supervisor may be held liable only if he or she took an active part in the constitutional violation but may not be held liable for inaction or acquiescence.[4] Other district courts have suggested that *Iqbal* requires a greater showing of intent for

---

violation through a report or appeal" and "failed to remedy the wrong" could be liable under the second *Colon* category).

[4] *Bellamy v. Mount Vernon Hosp.*, No. 07-CV-1801, 2009 WL 1835939, at *6 (S.D.N.Y. June 26, 2009) ("*Iqbal*'s 'active conduct' standard only imposes liability on a supervisor through section 1983 if that supervisor actively had a hand in the alleged constitutional violation. Only the first and part of the third *Colon* categories pass *Iqbal*'s muster—a supervisor is only held liable if that supervisor participates directly in the alleged constitutional violation or if that supervisor creates a policy or custom under which unconstitutional practices occurred. The other *Colon* categories impose the exact types of supervisory liability that *Iqbal* eliminated—situations where the supervisor knew of and acquiesced to a constitutional violation committed by a subordinate."); *see also Newton v. City of New York*, 640 F. Supp. 2d 426, 448 (S.D.N.Y. 2009) ("[P]assive failure to train claims pursuant to section 1983 have not survived the Supreme Court's recent decision in *Ashcroft v. Iqbal*."); *Spear v. Hugles*, No. 08-CV-4026, 2009 WL 2176725, at *2 (S.D.N.Y. July 20, 2009) (holding that because "each Government official, his or her title notwithstanding, is only liable for his or her own misconduct … only the first and third *Colon* factors have survived the Supreme Court's decision in *Iqbal*") (internal quotation marks omitted); *Joseph v. Fischer*, No. 08-CV-2824, 2009 WL 3321011, at *14 (S.D.N.Y. Oct. 8, 2009) ("[U]nder *Iqbal*, a defendant can be liable under section 1983 only if that defendant took an action that deprived the plaintiff of his or her constitutional rights. A defendant is not liable under section 1983 if the defendant's failure to act deprived the plaintiff of his or her constitutional right.").

14

§ 1983 claims related to invidious discrimination but not necessarily to other constitutional violations.[5]

Circuit courts have considered the impact of *Iqbal* as well. The Tenth Circuit has concluded that, "after *Iqbal*, [a p]laintiff can no longer succeed on a § 1983 claim against [a d]efendant by showing that as a supervisor he behaved knowingly or with deliberate indifference that a constitutional violation would occur at the hands of his subordinates, unless that is the same state of mind required for the constitutional deprivation he alleges." *Dodds v. Richardson*, 614 F.3d 1185, 1204 (10th Cir. 2010) (internal quotation marks omitted). "To establish a violation of § 1983 by a supervisor, as with everyone else, then, the plaintiff must establish a deliberate, intentional act on the part of the defendant to violate the plaintiff's legal rights." *Porro v. Barnes*, 624 F.3d 1322, 1327-28 (10th Cir. 2010) (Gorsuch, J.) (internal quotation marks and alteration omitted). The focus is on what the *supervisor* did or caused to be done, "the resulting injury attributable to his conduct, and the *mens rea* required of him to be held liable,

---

[5] *See, e.g.*, *D'Olimpio v. Crisafi*, 718 F. Supp. 2d 340, 347 (S.D.N.Y. 2010) ("As *Iqbal* noted, the degree of personal involvement varies depending on the constitutional provision at issue; whereas insvidious discrimination claims require a showing of discriminatory purpose, there is no analogous requirement applicable to … allegations regarding [a] search, arrest, and prosecution. … Thus, the five *Colon* categories for personal liability of supervisors may still apply as long as they are consistent with the requirements applicable to the particular constitutional provision alleged to have been violated."); *Sash v. United States*, 674 F. Supp. 2d 531, 544 (S.D.N.Y. 2009) ("Where the constitutional claim does not require a showing of discriminatory intent, but instead relies on the unreasonable conduct or deliberate indifference standards of the Fourth and Eighth Amendments, the personal involvement analysis set forth in *Colon v. Coughlin* may still apply.").

15

which can be no less than the *mens rea* required of anyone else. Simply put, there's no special rule of liability for supervisors. The test for them is the same as the test for everyone else." *Id.* at 1328 (internal citations omitted). Other circuits have endorsed this view.[6]

We join these circuits in holding that after *Iqbal*, there is no special rule for supervisory liability. Instead, a plaintiff must plead and prove "that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. "The factors necessary to establish a [§ 1983] violation will vary with the constitutional provision at issue" because the elements of different constitutional violations vary. *Id.* The violation must be established against the supervisory official directly.

---

[6] *Nelson v. Corr. Med. Servs.*, 583 F.3d 522, 534-35 (8th Cir. 2009) (en banc) ("In a § 1983 case an official is only liable for his own misconduct and is not accountable for the misdeeds of his agents under a theory such as respondeat superior or supervisor liability. [The official] is thus liable only if he personally displayed deliberate indifference to the [relevant] hazards.") (internal citations, quotation marks, and alterations omitted); *see also Vance v. Rumsfeld*, 701 F.3d 193, 204 (7th Cir. 2012) (en banc) ("*Iqbal* held that knowledge of subordinates' misconduct is not enough for liability. The supervisor must want the forbidden outcome to occur."); *OSU Student All. v. Ray*, 699 F.3d 1053, 1073 n.15 (9th Cir. 2012) ("*Iqbal* means that constitutional claims against supervisors must satisfy the elements of the underlying claim, including the mental state element, and not merely a threshold supervisory test that is divorced from the underlying claim."); *Carnaby v. City of Houston*, 636 F.3d 183, 189 (5th Cir. 2011) ("Under § 1983 … a government official can be held liable only for his own misconduct. Beyond his own conduct, the extent of his liability as a supervisor is similar to that of a municipality that implements an unconstitutional policy.") (internal citation omitted).

In this case, "[t]o state a claim under the Eighth Amendment on the basis that a defendant has failed to prevent harm, a plaintiff must plead both (a) conditions of confinement that objectively pose an unreasonable risk of serious harm to their current or future health, and (b) that the defendant acted with 'deliberate indifference.'" *Vega*, 963 F.3d 259, 273 (2d Cir. 2020) (quoting *Farmer*, 511 U.S. at 834). Deliberate indifference in this context "means the official must 'know[] of and disregard[] an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Id.* (quoting *Farmer*, 511 U.S. at 837).

Tangreti must therefore establish that Bachmann violated the Eighth Amendment by Bachmann's own conduct, not by reason of Bachmann's supervision of others who committed the violation. She must show that Bachmann herself "acted with 'deliberate indifference'"—meaning that Bachmann personally knew of and disregarded an excessive risk to Tangreti's health or safety. *Id.* (quoting *Farmer*, 511 U.S. at 834). Tangreti cannot rely on a separate test of liability specific to supervisors. *See Whitson v. Stone Cty. Jail*, 602 F.3d 920, 928 (8th Cir. 2010) ("These defendants are thus liable only if they *personally displayed* deliberate indifference to the risk that [the inmate] would be assaulted.") (emphasis added).

### B

The pretrial record does not support the inference that Bachmann "kn[ew] of and disregard[ed]" a substantial risk of sexual abuse by the three officers in the sense that Bachmann was both "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed], and [that s]he … also dr[e]w

17

the inference.'" *Farmer*, 511 U.S. at 837. Accordingly, Bachmann is entitled to summary judgment.

Even taking Tangreti's version of the facts, the pretrial record does not permit the inference that Bachmann had subjective knowledge of the risk of the sexual abuse inflicted on Tangreti and that she decided to disregard that risk. Bachmann observed Bromley and Tangreti interacting inappropriately twice: once when she overheard Bromley and Tangreti conversing in the laundry room about other correctional staff and another time when she noticed Tangreti lingering in Bromley's doorway. Neither time did Bachmann observe a sexual interaction.

Apart from Bachmann's two personal observations, the undisputed pretrial record shows that inmates complained to Bachmann that Bromley and Tangreti were too familiar but not that they were sexually involved. It shows that, close to October 31, 2014, Bachmann had noticed changes in Tangreti's physical appearance and emotional behavior but did not infer that the changes stemmed from ongoing sexual abuse.

Given this record, at most it may be said that Bachmann could have or should have made an inference of the risk of sexual abuse.[7] But there is no evidence that she made that inference until October 31,

---

[7] Tangreti also argues that Bachmann knew that the lack of cameras in the Davis Building increased the risk of sexual abuse. However, Tangreti acknowledges that Bachmann had discussed the need for cameras with the warden and deputy warden. Moreover, it is undisputed that Bachmann was not responsible either for procuring cameras or for York's camera policy. The district court correctly concluded that apart from discussing this problem with other officials, Bachmann had no further responsibility to resolve it. *See Tangreti*, 2019 WL 4958053, at *19.

2014, when she discovered, and questioned Tangreti about, the ongoing sexual abuse. There is therefore insufficient evidence in the pretrial record that Bachmann acted with deliberate indifference to support Tangreti's § 1983 claim. Contrary to the district court's conclusion, it is not enough for Tangreti to show that Bachmann was negligent, or even grossly negligent, in her supervision of the correctional officers or in failing to act on the information she had. The deliberate-indifference standard "require[es] a showing that the official was subjectively aware of the risk," *Farmer*, 511 U.S. at 829, and that showing has not been made.

\* \* \*

In sum, we agree with Bachmann that the scope of supervisory liability under § 1983 for violations of the Eighth Amendment was not clearly established at the time of the relevant conduct. To hold a state official liable under § 1983, a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability. In the context of the Eighth Amendment, that requires a showing of deliberate indifference on the part of the state-official, and the pretrial record in this case cannot meet that standard. Accordingly, we **REVERSE** the judgment of the district court and remand with instructions to enter summary judgment for the defendant.

A True Copy
Catherine O'Hagan Wolfe, Clerk
United States Court of Appeals, Second Circuit